## National Cash Reg. Co., Appellant, v. Sorto, Pascarella, also Augostine, Intervening Defendant.

Argued April 20, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*William J. Caldwell* of *Hugus and Caldwell,* for appellant.

No appearance and no printed brief for appellee.

Opinion by Gawthrop, J., July 14, 1932:
Plaintiff brings this appeal from a judgment entered

against it and in favor of the intervening defendant, Augostine, in a case stated for the opinion of the court below in the nature of a special verdict, with the right to appeal reserved.

The material facts are these: Plaintiff, owner of a National cash register, delivered the same to Grace Sorto, one of the defendants, under a bailment lease contract. The cash register was upon premises occupied by Sorto in operating a restaurant. The premises were held by her as a tenant under lease from Paul R. Vernett and others, lessors. In October, 1929, the Federal Tobacco Company obtained a judgment against Sorto for the sum of $25.78 before an Alderman. An execution on this judgment was placed in the hands of a constable who, on November 15, 1925, levied upon the personal property on the premises occupied by Sorto in her restaurant business, including the cash register mentioned. The landlords served notice upon the constable that the tenant Sorto was in arrears with her rent to the amount of $200, covering a period of four months, and that they claimed this amount from the proceeds of sale of the goods levied upon. The constable's sale of all the property levied upon, including the cash register, was held, and Pascarella, one of the defendants, became the purchaser for $287.18. The plaintiff had no notice of the levy made by the constable on the cash register and made no claim for it to the constable prior to or at the sale. Pascarella sold the cash register to Augostine, the intervening defendant, who has been in possession thereof since January 28, 1930. The plaintiff issued a writ of replevin for the cash register.

The question presented to the court below was whether or not the sale of the cash register by the constable carried any title to it to the purchaser. The answer was in the affirmative and the correctness of this conclusion is challenged by appellant.

It was held by the court below that Sections 83, 84

and 85 of the Act of June 18, 1836, P. L. 755 (which are set forth in the margin) authorized the sale of the cash register on the execution writ and that the sale passed a good title to the purchaser; and that under these sections of the act when an officer makes a levy on personal property situated on demised premises, under an execution writ, and has received a notice of the landlord's claim for rent, any goods then in his hands which could have been distrained by the landlord for rent must be sold by him unless he has been excused therefrom by the landlord, regardless of whether or not such goods belonged to the defendant. In reaching that conclusion, the court placed the same construction on these sections of the Act of 1836 that was placed upon it by STRAUSS, J., in Moneyweight Scale Co. v. Shedleski, 23 Dist. Reps. 37. After the fullest consideration we are forced to the conclusion that in so doing the court fell into error.

It is well settled that a judgment creditor must look to the property of his debtor for the satisfaction of his judgment and cannot sell the goods of others for the satisfaction of it. This is part of the law of execution.

---

Section 83. The goods and chattels being in or upon messuages, lands and tenements, which are or shall be demised for life or years, or otherwise, taken by virtue of an execution and liable to distress of the landlord, shall be liable for the payment of any sums of money due from rent at the time of taking such goods in execution, provided that such rents shall not exceed one year's rent.

Section 84. After the sale by the officer of any goods or chattels as aforesaid, he shall first pay out of the proceeds of such sale the rent so due, and the surplus thereof, if any, he shall apply toward satisfying the judgment mentioned in such execution; Provided, that if the proceeds of the sale shall not be sufficient to pay the landlord and the costs of the execution, the landlord shall be entitled to receive the proceeds, after deducting so much for costs as he would be liable to pay in case of a sale under distress.

Section 85. Whenever any goods or chattels liable to the payment of rent as aforesaid shall be seized in execution, the proceedings upon such execution shall not be stayed by the plaintiff therein without the consent of the person entitled to such rent, in writing, first had and obtained.

"The common law rule that whatever goods and chattels the landlord finds upon the demised premises, whether they belong in fact to the tenant or a stranger, are distrainable by him for rent in arrear is, as its terms indicate, part of the law of distress, not of execution. But a landlord could not distrain on goods which were in the custody of the law, and it is still so. To meet this situation the English statute of 8th Anne, ch. 4, provided for the protection of the landlord, that goods on the demised premises should not be taken on execution unless the creditor pay the landlord the arrears of rent before they were removed, not exceeding in the whole the rent of a single year due at the time of the levy:" Liquid Carbonic Co. v. Truby, 40 Pa. Superior Ct. 634. As stated in Pierce v. Scott, 4 W. & S. 344, "our statute is nearly the same, the principal difference being that with us the year's rent is paid out of the proceeds of the sale without regard to the removal of the goods." The statute referred to is the Act of 1836, supra, which relates to executions, as these have been construed by our courts (Greider's Appeal, 5 Pa. 422). The first of these sections provides, that goods taken in execution and liable to the distress of the landlord shall be liable to the payment of the rent due at the time of taking such goods in execution; and the next directs that, after the sale of such goods, by the officer, he shall pay out of the proceeds the rent so due. In speaking of these provisions the Supreme Court said in Greider's Appeal, supra: "It cannot be doubted that the object of these provisions was to make the landlord amends for taking away his power of distress by a judicial sale of the tenant's goods liable thereto." The same view was expressed in Com. v. Contner, 21 Pa. 266, 274. To us it seems clear that the words "goods and chattels taken by virtue of an execution," mean, and refer to, goods and chattels liable to levy under the execution writ, that is, the goods and chattels be-

longing to the tenant. We find in the act no evidence of an intention on the part of the legislature to add as an incident to an execution upon a judgment obtained by one other than the landlord the right to seize and sell the goods of a stranger which happen to be on the demised premises. As observed by President Judge Rice in Liquid Carbonic Co. v. Truby, supra, the statute does not furnish any satisfactory evidence of an intention on the part of the legislature to add as an incident to an execution *upon a judgment for rent* the right to seize and sell the goods of a stranger which happen to be on the demised premises. While the proceeding under the execution writ in this case was no longer for the benefit of the execution creditor alone and, by the terms of section 85 of the act, could not have been stayed by him without the consent of the landlords, the statute did not give the execution creditor additional rights. It did not engraft upon the execution the landlord's right, to sell, in a distress proceeding, the goods of a stranger found on the premises. To hold otherwise would give the execution creditor an undue advantage whenever the property of his debtor happened to be found on demised premises when there was rent in arrears. We are constrained to the conclusion that the construction placed upon the Act of 1836 by the court below cannot be sustained, either upon principle or authority, and that the question whether the sale of the cash register carried the title thereof to the purchaser should have been answered in the negative.

The judgment is reversed and here entered for the plaintiff.