Sally WERSBA

v.

John J. SEILER, Alfred Seiler, Ernest Seiler, Wersba-Seiler, Inc., Wonder Knitting Mills, Inc., and Albert Schlager.

Civ. A. No. 33083.

United States District Court
E. D. Pennsylvania.

Feb. 13, 1967.

A. Samuel Buchman, Philadelphia, Pa., for plaintiff.

David G. Welty, William A. Steckel, Slatington, Pa., for defendants John J. Seiler, Alfred Seiler, Ernest Seiler, Wersba-Seiler, Inc. and Wonder Knitting Mills, Inc.

Marshall J. Seidman, Seidman & Rome, Philadelphia, Pa., for defendant Albert Schlager.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLARY, Chief Judge.

This is a diversity action in which it is alleged that through concerted action and corporate mismanagement, defendants caused and allowed plaintiff's property to be sold at a Sheriff's sale. Plaintiff claims damages in excess of $90,000.00. On December 21, 1966, this Court, after hearing the evidence, delivered an oral opinion denying plaintiff's claims. Now, after submission by the parties of Requests for Findings of Fact and Conclusions of Law, the Court makes the following

## FINDINGS OF FACT

1. The plaintiff, Sally Wersba, is an individual residing at 200 Atlantic Avenue, Lynbrook, Long Island, New York.

2. The defendants, John J. Seiler, Alfred Seiler and Ernest Seiler, are brothers residing in the Borough of Slatington, Lehigh County, Pennsylvania.

3. The corporate defendants, Wersba-Seiler, Inc. and Wonder Knitting Mills, Inc., are corporations duly organized and existing under the laws of the State of Pennsylvania, having their principal place of business in the Borough of Slatington, Lehigh County, Pennsylvania.

4. The defendant, Albert Schlager, is an individual residing in the Borough of Slatington, Lehigh County, Pennsylvania, and is the owner of premises known as 530 Main Street, Slatington, Pennsylvania.

5. Charles Wersba is and was the husband of Sally Wersba and was the principal stockholder and President of a New York business corporation which manufactured slipper socks and toe guards and which was known as Charles Wersba Hosiery Corporation.

6. In December of 1956, Charles Wersba Hosiery Corporation had a manufacturing plant located in Long Island City, New York, the lease for which was about to expire.

7. In December of 1956, an agreement was entered into between Charles Wersba and John Seiler that the business of Charles Wersba Hosiery Corporation would be transferred to Slatington, Pennsylvania, and a new corporation formed to manufacture slipper socks and toe guards.

8. On December 11, 1956, Charles Wersba and John Seiler, as individuals, entered into a lease with Albert Schlager for part of the premises known as 530 Main Street, Slatington, Pennsylvania, to be used for the manufacture of slipper socks and toe guards by the corporation to be subsequently formed and known as Wersba-Seiler, Inc.

9. Thereafter, Charles Wersba and John Seiler caused to be formed a new corporate entity known as Wersba-Seiler, Inc., for the purpose of carrying on the business previously done by Charles Wersba Hosiery Corporation.

10. Plaintiff, Sally Wersba, was a fifty per cent (50%) stockholder in defendant corporation, Wersba-Seiler, Inc., and was a Director and Secretary-Treasurer of the said corporation.

11. John Seiler was the President and also a Director of Wersba-Seiler, Inc., and he was responsible for the operations of the said corporation.

12. Ernest Seiler was a Director of Wersba-Seiler, Inc., but was not actively engaged in the conduct of the business. Alfred Seiler was not an officer or Director but was an employee of Wersba-Seiler, Inc.

13. Charles Wersba was not an officer or a Director of Wersba-Seiler, Inc., but he was responsible for the sales of the said corporation.

14. Sally Wersba, who remained in Long Island, New York, did not take an active part in the management or operation of the business of Wersba-Seiler,

Inc., and Charles Wersba, with his wife's knowledge and permission, acted for her whenever necessary.

15. On January 2, 1957, a lease agreement was entered into between Charles Wersba Hosiery Corporation, lessor, and Wersba-Seiler, Inc., lessee, for the lease of machinery and equipment to be used on the premises at 530 Main Street, Slatington, Pennsylvania, for the manufacture of slipper socks and toe guards.

16. The machinery and equipment, together with the inventory of finished and unfinished slipper socks and toe guards of Charles Wersba Hosiery Corporation, were moved from New York and placed on the leased premises at 530 Main Street in Slatington, Pennsylvania, and Wersba-Seiler, Inc. began the manufacture of slipper socks and toe guards.

17. In February 1958, after an informal meeting in the living room of the home of Charles and Sally Wersba in Long Island, New York, a written Bill of Sale covering the machinery, equipment and inventory of Charles Wersba Hosiery Corporation was executed to Sally Wersba for $1.00 by Charles Wersba on behalf of the said corporation.

18. This said Bill of Sale to Sally Wersba was executed by Charles Wersba solely for his own convenience and was not a bona fide transaction.

19. At all times thereafter, Charles Wersba, with the knowledge and acquiescence of Sally Wersba, held himself out as sole owner of Charles Wersba Hosiery Corporation, able to dispose of the said machinery, equipment and inventory as he so desired.

20. Regular books of accounts and records were kept by the accountant for Wersba-Seiler, Inc. during the year 1957. No formal books of account were kept during the year 1958, Charles Wersba having discharged the accountant, but all of the fundamental documents, invoices, checkbook stubs, cancelled checks and bank deposits were maintained.

21. From 1957 when Wersba-Seiler, Inc. began business until December of 1958, Charles Wersba, acting on behalf of Sally Wersba, was one of the principals involved in the operation of the business, keeping the records and books of the corporation and having access to all records.

22. By August of 1958 the operation had proved unsuccessful, and new capital was obtained (1) through a contribution from Charles Wersba, and (2) through a personal loan from the Slatington Bank by the mother of the Seilers, and the giving of notes to her by Wersba-Seiler, Inc., executed by Charles Wersba on behalf of the said corporation.

23. On December 23, 1958, when it was clearly evident that the business was completely insolvent, Charles Wersba, John Seiler, Robert K. Young, Esquire, attorney for Charles Wersba, William A. Steckel, Esquire, attorney for Wersba-Seiler, Inc., and Mr. Litwin, former accountant for Wersba-Seiler, Inc., met and thoroughly discussed the situation, after which an agreement was reached wherein, in consideration for the Seilers' using their best efforts to avoid bankruptcy, voluntary or involuntary, Charles Wersba, acting for himself and on behalf of Sally Wersba, and as President and principal stockholder of Charles Wersba Hosiery Corporation, made an assignment of all the equipment and machinery then remaining on the premises known as 530 Main Street, Slatington, Pennsylvania, to Wersba-Seiler, Inc., for the benefit of creditors of Wersba-Seiler, Inc. and Charles Wersba Hosiery Corporation.

24. Sally Wersba, the plaintiff, knew that the company was in great financial difficulty and had authorized her husband, Charles Wersba, to act for her in all matters relating to the operation of the business and the liquidation of its assets.

25. Acting pursuant to the agreement entered into on December 23, 1958, defendant, John Seiler, made settlements with creditors of Wersba-Seiler, Inc., and was successful in avoiding bankruptcy.

26. Also significant in avoiding bankruptcy was a letter sent to twenty or more creditors by Robert K. Young, Esquire, personal attorney for Charles Wersba.

27. Nevertheless, from January 1, 1959 until June 1959, there was insufficient money in the corporation to pay the rent for the premises at 530 Main Street, Slatington, Pennsylvania.

28. On June 24, 1959, defendant, Albert Schlager, by virtue of the Warrant of Attorney to Confess Judgment contained in said lease, entered judgment against John Seiler and Charles Wersba in the Court of Common Pleas of Lehigh County, Allentown, Pennsylvania, as of June Term 1959, No. 442, for accrued rent, from January 1, 1959 to June 30, 1959, in the sum of $810.00, plus attorney's fees of five per cent (5%), and plus an acceleration of rent under the said lease, or a total of $5,103.00, and issued a Sheriff's execution thereon.

29. On July 9, 1959, a Sheriff's sale for the rent due was duly and properly had wherein the landlord bought the machinery, equipment and inventory on the premises for $1.00 and duly received from the Sheriff his deed for said sale.

30. Subsequently, on October 22, 1959, defendant, Albert Schlager, sold to defendants, Alfred and Ernest Seiler, the machinery, equipment and inventory purchased by him at the Sheriff's sale for the unpaid back rent due and the execution of a new five year lease on the premises at 530 Main Street, Slatington, Pennsylvania, at a higher rent.

31. Thereafter, defendants, Alfred and Ernest Seiler, transferred the same machinery, equipment and inventory to the defendant, Wonder Knitting Mills, Inc., a newly organized corporation formed by the Seilers, and engaged in a different textile business than that engaged in by Wersba-Seiler, Inc.

32. There was no conspiracy between Albert Schlager, the landlord, and the remaining defendants, or any of them, to wrongfully convert the property of the plaintiff, Sally Wersba, to their own use.

33. The defendant, John Seiler, faithfully carried out his duties as an officer of Wersba-Seiler, Inc., in the management and liquidation of the corporation, and there was no mismanagement on his part with respect to plaintiff.

34. In November of 1961, Charles Wersba Hosiery Corporation was duly dissolved by the State of New York.

## DISCUSSION

The trial of this case was rather arduous because of failure to utilize discovery procedures. Many matters, particularly in connection with the keeping of corporate records and the contents thereof, could have been determined far in advance of trial. However, no interrogatories were promulgated, and it was necessary for the Court to hear extended testimony in conection with these items. Nevertheless, the Court has considered carefully all of the testimony and exhibits, and the foregoing Findings of Fact represent the considered judgment of the Court from the testimony adduced.

Also, because plaintiff's allegations of corporate mismanagement and conspiracy were not shown to be more than mere suspicions, the Court stresses their baselessness. The Seiler brothers were diligent, competent, and conscientious in both the management and the settlement of the business of Wersba-Seiler, Inc., and if it had not been for their efforts, Wersba-Seiler, Inc. would surely have gone into bankruptcy. In addition, the relationship between the Seilers and Albert Schlager was entirely honest and proper; there was not a hint of conspiracy in the testimony. Albert Schlager only exercised his lawful rights as a landlord, when it became evident that the rent would not be paid. Therefore, the Court makes the following

## CONCLUSIONS OF LAW

1. This Court has jurisdiction. 28 U.S.C. § 1332.

2. The February 1958 sale by Charles Wersba of the machinery, equipment and inventory of Charles Wersba Hosiery Corporation to Sally Wersba was void under the New York State law of fraudulent conveyances. Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 276; Pattison v. Pattison, 301 N.Y. 65, 92 N.E.2d 890 (1950).

3. In December of 1958, Wersba-Seiler, Inc. was completely insolvent.

4. Charles Wersba, as President and principal owner of Charles Wersba Hosiery Corporation, had authority to assign the equipment and machinery of the said corporation to Wersba-Seiler, Inc., for the benefit of creditors of Wersba-Seiler, Inc. and Charles Wersba Hosiery Corporation.

5. In any event, Charles Wersba, as agent of Sally Wersba, had authority, real and apparent, to assign the equipment and machinery of Charles Wersba Hosiery Corporation to Wersba-Seiler, Inc., for the benefit of creditors, on December 23, 1958.

6. The plaintiff, Sally Wersba, also is estopped by her own actions and conduct to claim lack of authority of Charles Wersba to act on her behalf with respect to the management of Wersba-Seiler, Inc., and the assignment of the equipment and machinery of Charles Wersba Hosiery Corporation for the benefit of creditors.

7. The defendant, Albert Schlager, acted properly and lawfully in exercising his right as landlord given to him under Pennsylvania law.

8. The defendant, Albert Schlager, did not conspire with any individual or any corporate entity in asserting his rights as a landlord but acted entirely and solely by himself and in his own behalf.

9. Legal and equitable title to all of the machinery, equipment and inventory sold at the Sheriff's sale is now vested in Alfred Seiler and Ernest Seiler or their assigns.

10. Plaintiff has failed to meet her burden of proof to show any wrongdoing on the part of defendants, John Seiler, Alfred Seiler and Ernest Seiler, in the management or liquidation of the assets of Wersba-Seiler, Inc. and Charles Wersba Hosiery Corporation.

11. Plaintiff has failed to meet her burden of proof to show any conspiracy among the defendants to unlawfully convert her property to their own use.

12. Under the facts and evidence in this case, judgment must be entered in favor of all the defendants and against plaintiff on all counts.

13. Under the law applicable to the facts and evidence in this case, judgment must be entered in favor of defendants and against plaintiff on all counts.

## FURTHER DISCUSSION

In addition to her allegations of corporate mismanagement and conspiracy, plaintiff has also attacked the substance of the Sheriff's sale. She contends that on July 9, 1959, title to the said machinery, equipment and inventory was not in either of the judgment debtors, John Seiler and Charles Wersba. Instead, she argues that Charles Wersba, either by the February 1958 Bill of Sale to herself or by the December 1958 assignment to Wersba-Seiler, Inc., put title in a stranger immune from execution. She further argues that, in any event, title was in Charles Wersba Hosiery Corporation, which she also claims is an immune stranger. Thus, she concludes that Albert Schlager did not receive a good title. The rule in Pennsylvania is that, in the absence of fraud, execution may ordinarily issue only against the property of the judgment debtor. Fidelity Trust Co. v. Union National Bank, 313 Pa. 467, 169 A. 209 (1933); National Cash Register Co. v. Sorto, 106 Pa.Super. 106, 161 A. 766 (1932). However, this is not such a case.

As is obvious upon consideration of the Findings of Fact and Conclusions of Law, this contention is without merit. These transactions were part of the atmosphere of self-dealing that surrounded Charles Wersba as he tried to salvage his business. As a result, separate title holding identities are nearly impossible to delineate. Charles Wersba disregarded all form, corporate or otherwise, except when it suited his needs, and the other parties, probably because of the realities of the situation, did not attach importance to designation of identity. Thus, fundamental principles of justice and equity require that these transactions be disregarded.

A. *The Bill of Sale to Sally Wersba*

Under New York State law,[1] the February 1958 Bill of Sale to Sally Wersba is void as a fraudulent conveyance. A conveyance is fraudulent when the grantor, even though solvent, is motivated by an intent to hinder, delay or defraud his creditors. Debtor and Creditor Law, § 276; Pattison v. Pattison, 301 N.Y. 65, 92 N.E.2d 890 (1950). Charles Wersba made the Bill of Sale only to prevent his creditors from reaching the said assets. He acted with a fraudulent intent, and therefore this transaction is clearly within the above rule and is void.

B. *Charles Wersba and Charles Wersba Hosiery Corporation*

Charles Wersba treated Charles Wersba Hosiery Corporation as a sole proprietorship. He held himself out and acted as sole owner, manipulating it as he saw fit. Now, he seeks to protect himself with the corporate entity which he so readily disregarded. This the Court will not permit. New York and Pennsylvania both provide that the corporate fiction will be disregarded to protect innocent third parties from and to prevent fraud and injustice. Great Oak Building and Loan Association v. Rosenheim, 341 Pa. 132, 19 A.2d 95 (1941); Bartle v. Home Owners Cooperative, 309 N.Y. 103, 127 N.E.2d 832 (1955); Petrovich v. Felco Chemical Corporation, 194 Misc. 111, 86 N.Y.S.2d 327 (1949). This doctrine, often called "piercing the corporate veil", applies in full force to the instant case.[2]

It would be a gross injustice and a fraud to let Charles Wersba hide behind this corporation, which existed as a separate entity only when it was to his advantage, and thus evade an obligation which was incurred so that the business of this same corporation might survive. It is this type of corporate manipulation which the "corporate veil" doctrine seeks to prevent. The facts overwhelmingly show that once Wersba-Seiler, Inc. was formed, Charles Wersba Hosiery Corporation continued to exist only on paper. Therefore, the Court concludes that Charles Wersba Hosiery Corporation is not a third party, but is Charles Wersba himself.

C. *The Assignment for Creditors of Wersba-Seiler, Inc. and Charles Wersba Hosiery Corporation*

Without actually deciding the validity of this transfer as against defendant Schlager, in light of the preceding Section B, it need only be said that Charles Wersba, by assigning the said machinery and equipment to Wersba-Seiler, Inc. for creditors of Wersba-Seiler, Inc. and Charles Wersba Hosiery Corporation, accomplished nothing which would immunize the title. The assignment for creditors of Charles Wersba Hosiery Corporation would necessarily include defendant Schlager.

Thus, in conclusion, the Court makes note that even now, the Seilers do not want to keep Charles Wersba's inventory from him. They have declared in open Court that he can have all that remains.

All proposed Findings of Fact and Conclusions of Law submitted by both plaintiff and defendants, inconsistent with the above Findings of Fact and Conclusions of Law, are refused.

ORDER

And now, to wit, this 13th day of February, 1967, for the reasons set forth in the foregoing Findings of Fact and Conclusions of Law, it is ordered, adjudged and decreed that judgment be entered in favor of all the defendants and against the plaintiff.

---

1. The validity of a contract is determined by the law of the State in which it is executed. Linn v. Employers Reinsurance Corp., 392 Pa. 58, 139 A.2d 638 (1958).

2. The law of New York and the law of Pennsylvania on "piercing the corporate veil" are substantially similar, and under the instant facts, there is no question but that they would both apply. Therefore, any conflict of laws question which might arise need not be decided.