**In re ROAD PATCH SERVICES, INC., Debtor.**

**ROAD PATCH SERVICES, INC., Plaintiff,**

v.

**Frank CARAPICO, A. Joseph D'Ambrosio, and Cordine Scartozzi, individually and trading as CDS Investment Company, a Pennsylvania general partnership, Defendants.**

**Bankruptcy No. 92–17055S.
Adv. No. 93–0189S.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 10, 1993.

Michael D. Sehl, Southeastern, PA, for debtor.

Guy A. Donatelli, West Chester, PA, for defendants.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA, U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Resolution of the instant proceeding requires this court to address the efficacy of a landlord's attempt to rationalize his apparent execution upon property of a third party non-tenant who is a debtor in bankruptcy following execution on a confessed judgment against the tenant as a distraint, and then to utilize distraint as a legal basis to retain that property. Finding alternatively that (1) the landlord was not actually utilizing distraint; and (2) if it were, any use of distraint is unconstitutional and the instant distraint effected by a sheriff is clearly unconstitutional, we will order that the landlord release all of the property in issue except one item removed from consideration to the Debtor, since the remaining items are property of the Debtor's bankruptcy estate.

### B. PROCEDURAL AND FACTUAL HISTORY

ROAD PATCH SERVICES, INC. ("the Debtor") filed a voluntary Chapter 11 bankruptcy case on November 16, 1992. By Order of April 1, 1993, the Debtor was directed to file a plan of reorganization and an accompanying disclosure statement by July 1, 1993, and list the propriety of the disclosure statement for a hearing on July 28, 1993. The resolution of this proceeding should spur compliance with those directives.

On March 10, 1993, the Debtor filed the Complaint in this instant proceeding against FRANK CARAPICO, A. JOSEPH D'AMBROSIO, AND CORDINE SCARTOZZI, individually and as partners of CDS INVESTMENT COMPANY (collectively referred to as "CDS"), seeking the turnover of certain personal property ("the Property") apparently in a premises owned by CDS which is located at 891 East Lincoln Highway, Exton, Pennsylvania 19341 ("the Premises"). The Premises was leased from CDS by Ruth E. Turk and Charles L.

Johnson, Jr. ("Johnson"), jointly and severally and trading as Pipe Maintenance Service, Inc. ("PMS"), under a lease dated May, 1986 ("the Lease").

In its Complaint, the Debtor sought recovery of certain business records and trucks, trailers, tools, and other equipment utilized by the Debtor in its business of repairing roads and highways for the state and various municipalities. No monetary damages or counsel fees were requested, allegedly because the Debtor wanted to concentrate on getting its property returned.[1]

A trial of the proceeding was scheduled on May 5, 1993. The parties stipulated, at its outset, that the Debtor was neither a tenant nor a subtenant at the Premises and that there was property on the Premises the return of which the Debtor had unsuccessfully attempted to procure from CDS. Following the hearing, we entered an Order giving the Debtor an opportunity to file a Brief by May 19, 1993, and CDS to file a Reply Brief by May 26, 1993.

The only witness at the trial was Johnson, the president, original incorporator, and sole shareholder of the Debtor since its formation in 1987. Johnson stated that he is also the president and fifty (50%) percent shareholder of PMS. He further testified that, as president of the Debtor, he had never entered into any contracts with CDS, although he had permitted the Debtor, in his capacity as president of PMS, to store its property and other materials and to have free access to the Premises. The business relationship between the Debtor and PMS was described as informal, in that each entity used property of the other without payment or documentation supporting same. The Debtor, PMS, and Jet Equipment Co. ("Jet"), another entity of which Johnson is a principal, also share a master insurance policy. Thus, the insurance financial responsibility identification card for a road patching truck at the Premises, al-

---

**1.** The Debtor (and his counsel) could apparently have invoked, *inter alia,* 42 U.S.C. §§ 1983, 1988, as a basis for such relief.

though leased by the Debtor, listed the Debtor, PMS, and Jet as insured parties.

Johnson testified that the Debtor's primary place of business is located in Mountain Home, Monroe County, Pennsylvania. The Debtor utilized, for its filing, an address in Coatesville, Pennsylvania, where PMS presently has an office and the Debtor's remaining trucks are frequently repaired. The Debtor continues to remain in business and bid on projects because it had the majority of its equipment at its main office in Mountain Home and "on the road" when the seizure of the Property in issue occurred. However, Johnson claimed that, if his records and the Property were not promptly returned, he would be compelled to convert this case to a Chapter 7 case. At the conclusion of the trial, CDS agreed to forthwith return the Debtor's business records to it, and presumably this has been done, although we have included a reference to the records in our Order.

On October 9, 1992, CDS confessed a judgment in ejectment against PMS in the Chester County Court of Common Pleas, pursuant to a confession of judgment clause in the Lease, and evicted PMS from the Premises. The Complaint avers and the Answer also affirmatively states that "the sheriff levied" upon the disputed Property, presumably pursuant to the confessed judgment. However, in what appears to be a revisionist theory of its justification for the seizure, CDS now argues that the Property was subject to distraint, apparently pursuant to 68 P.S. § 250.302. *See Luria Bros. & Co. v. Allen,* 672 F.2d 347, 354 (3rd Cir.1982); *Santiago v. McElroy,* 319 F.Supp. 284, 286–88 (E.D.Pa.1970) (three-judge court); and *Allegheny Clarklift, Inc. v. Woodline Indus. of PA, Inc.,* 356 Pa.Super. 269, 270 n. 1, 514 A.2d 606, 606 n. 1 (1986) (common law distraint is presently codified in this provision of the Pennsylvania Landlord and Tenant Act of 1951).

The only evidence in the record as to what physically occurred when the Debtor's Property was seized was the testimony of Johnson that, on October 14, 1992, a sheriff appeared at the Premises and informed him that he had "ten minutes to grab what [he] could and walk out the door." Since that date, the Property has remained on the Premises. Prior to commencing this Proceeding, Johnson prepared a list of the Property, which was entered into evidence at trial as Exhibit "D–1." However, he stated that the list was incomplete because it was prepared from memory without an opportunity to view the Premises or his records remaining therein.

Without restating the list in its entirety, we note that it included a tank truck, a van, a street sweeper and a trailer titled to the Debtor; a road patcher truck titled in the name of Community Patching Service ("Community"), which Johnson testified had been leased by the Debtor from Community; a motor home owned by him personally which he allegedly utilized in part on behalf of the Debtor; computer equipment owned by Valerie Steely, an employee of the Debtor, which was allegedly used by the Debtor in its business; a time clock which Johnson stated was owned by the Debtor but was "used" by PMS; and various pieces of equipment, materials, and other items used in the Debtor's business.

During the trial, the claim to recover the motor home on behalf of the Debtor was withdrawn. Johnson claimed that the retention of the Property had resulted in over $700,000 in lost business opportunities between October 14, 1992, and the time of trial. Although reiterating the absence of a damage claim, the Debtor's counsel was permitted to present this testimony as evidence of the Debtor's compelling need to recover the Property.

### C. DISCUSSION

1. THE PARTIES AGREE THAT CDS COULD NOT VALIDITY EXECUTE AGAINST THE DEBTOR'S PROPERTY TO ENFORCE ITS JUDGMENT AGAINST PMS, AS WE FIND WAS IN FACT THE CASE.

The post-trial Briefs of the parties reflect an important area of agreement. They concur, we believe correctly, that CDS could not execute upon property of the Debtor to satisfy its judgment for rent

against PMS. *See Werbsa v. Seiler*, 263 F.Supp. 838, 843 (E.D.Pa.1967), *aff'd*, 393 F.2d 937 (3rd Cir.1968), citing *Fidelity Trust Co. v. Union National Bank*, 313 Pa. 467, 169 A. 209 (1933); and *National Cash Register Co. v. Sorto*, 106 Pa.Super. 106, 161 A. 766 (1932). *See also* Pennsylvania Rules of Civil Procedure 3201–16 (establishing procedures for determining third-party claims to property seized by a sheriff in execution).

The pleadings in this proceeding and the testimony of Johnson at trial strongly suggest that the retention of the Debtor's Property by CDS was in fact under color of CDS' execution on its confessed judgment against PMS. Perhaps in recognition of this fact, CDS saw fit to devote a portion of its Brief to addressing the issue of whether its confessed judgment against PMS was constitutional and hence valid. This court held, in *In re Souders*, 75 B.R. 427, 433–38 (Bankr.E.D.Pa.1987), that any use of confessed judgments in Pennsylvania was unconstitutional. However, the Third Circuit Court of Appeals, in *In re FRG, Inc.*, 919 F.2d 850, 856–57 (3rd Cir.1990), expressly rejected the reasoning, if not the result, of *Souders*.[2]

The *FRG* court held that, where a confessed judgment was utilized between "sophisticated principals, knowledgeable in business matters" and "was negotiated and specifically agreed upon in a commercial context in settlement of major litigation between parties represented by counsel," *id.* at 857, the entry of a confessed judgment was constitutionally permissible. However, the *FRG* court, *id.* at 856, approved the result in *Souders*, holding that the use of a confessed judgment was impermissible there because the debtor "did not understand the wording or significance of the note" which she signed containing a confession of judgment clause.

CDS presented no evidence that the confessed judgment clause in the Lease was negotiated between the parties, or that its terms were specifically agreed upon by the signatories of the Lease for PMS, or that these parties were represented by counsel when they executed the Lease. Having perceived Johnson on the stand, we believe that, despite his involvement in several small businesses, it is unlikely that he appreciated or comprehended the significance of signing a document containing a confession of judgment clause. Therefore, it is doubtful that, under the reasoning of *FRG*, CDS' use of a confessed judgment against PMS was constitutional.

However, in any event, CDS concedes that the execution against property of a third party such as the Debtor in execution of any judgment in favor of PMS would be illegal. Therefore, it is compelled to resort to the argument that its seizure of the Property was pursuant to a distraint, not an execution on a judgment. It notes that the Pennsylvania Superior Court, in *National Cash Register, supra*, distinguished a levy in distraint from a levy in execution on a judgment. 106 Pa.Super. 106, 111, 161 A. 766. In the case of a distraint levy, the *National Cash Register* court held that a landlord, contrary to its rights in an execution levy, may be entitled to seize and retain the property of a third party which is situated on the premises where a distraint is made. 106 Pa.Super. at 110, 161 A. at 767. *See also McCombs & Howden's Appeal*, 43 Pa. 435, 438–39 (1862); and *Liquid Carbonic Co. v. Truby*, 40 Pa.Super. 634, 636 (1909).

CDS thus agrees that, if we find that its actions constituted a levy on a judgment rather than a distraint, the retention of the Debtor's Property was and is improper. This court is skeptical of CDS's claim that it effected a distraint of the Debtor's Property. As we noted at page 871 *supra*, this

---

**2.** For what it is worth, this court is not convinced by the reasoning of *FRG*, for the reasons set forth in *Souders*. Nor do we believe that it is a sound judicial policy to allow the use of confession of judgment in certain illogical or vague circumstances, *i.e.*, where the income of the judgment debtors exceeds $10,000 annually or a waiver of constitutional rights of the judgment debtors is proven. Nevertheless, we recognize our duty to follow the holdings of *FRG* irrespective of our personal disagreement with them. *See In re Taras*, 136 B.R. 941, 948–49 (Bankr.E.D.Pa.1992).

assertion appears to be driven by expediency, because CDS recognizes the weakness of its rights under the facts which it admitted in its Answer to the Complaint. Parenthetically, it also appears somewhat illogical that a landlord can assert rights against a third party in a self-help procedure such as distraint, but cannot do so in an execution procedure which must be undertaken under the protective aegis of state officials.

CDS has presented no evidence to disprove the pleadings and the testimony of Johnson supporting the conclusion that the seizure of the Debtor's Property was subject to a levy in execution on the confessed judgment against PMS. We therefore hold that the execution in issue was upon a judgment, and moreover upon a judgment of questionable constitutionality, and not a distraint. Therefore, on this ground, judgment must be entered in favor of the Debtor.

2. ALTERNATIVELY, CDS' ATTEMPT TO INVOKE DISTRAINT TO SUPPORT ITS RETENTION OF THE DEBTOR'S PROPERTY IS INDEFENSIBLE, BECAUSE DISTRAINT IS FACIALLY UNCONSTITUTIONAL.

However, for purposes of establishing an alternative basis for resolution of this dispute, we will assume, *arguendo*, that CDS effected a distraint upon the Debtor's Property under 68 P.S. § 250.302 and that a distraint against the property of a third party is permissible, as *McCombs, supra;* and *Liquid Carbonic, supra,* hold. We conclude that the Debtor must nevertheless prevail because distraint *has* been held (apparently unlike its close cousin, confession of judgment) to be *facially* unconstitutional.

We begin our analysis of the constitutionality of distraint by observing once again that distraint is a landlord's self-help remedy. Because of the potential that a tenant may suffer significant harm from actions by an unchecked, overreaching landlord, this court has observed that Pennsylvania law does not favor self-help, extrajudicial remedies in the landlord-tenant context. *See In re Clarkson,* 105 B.R. 266, 271 (Bankr.E.D.Pa.1989) (self-help execution by a landlord is not only illegal, but also it constitutes an unfair trade practice); *In re B. Cohen & Sons Caterers, Inc.,* 97 B.R. 808, 814–16 (Bankr.E.D.Pa.), *aff'd in part & remanded in part,* 108 B.R. 482 (E.D.Pa.1989), *appeal dismissed,* 908 F.2d 961 (3rd Cir.1990), *clarified on remand,* 1990 WL 2632 (Bankr.E.D.Pa. January 11, 1990), *aff'd,* 1991 WL 17874 (E.D.Pa. February 13, 1991), *aff'd,* 944 F.2d 896 (3rd Cir.1991) (self-help execution by a commercial landlord is illegal); and *In re Adams,* 65 B.R. 646, 649 (Bankr.E.D.Pa.1986) (self-help evictions are impermissible under Pennsylvania law).

A significant number of Pennsylvania federal court decisions have already expressly declared the Pennsylvania distraint levy process facially unconstitutional. *See Ragin v. Schwartz,* 393 F.Supp. 152, 156–57 (W.D.Pa.1975) (three-judge court); *Litton Business Systems, Inc. v. Paul L'Esperance, Inc.,* 387 F.Supp. 1265, 1266 (E.D.Pa.1975); and *Stots v. Media Real Estate Co.,* 355 F.Supp. 240, 243 (E.D.Pa. 1973).[3]

CDS nevertheless argues that the decision of the Third Circuit Court of Appeals in *Luria Bros., supra,* has saved distraint from constitutional extinction. In that case, a subtenant brought an action against a landlord which had, without the benefit of involvement of any state official, posted a notice of distraint on a subleased premises and held 300 tons of steel plate located therein until the sublessee posted a bond. *Id.* at 350. Relying heavily upon the deci-

---

**3.** It is difficult to logically explain why confession of judgment did not meet the same fate as distraint, *i.e.,* was declared facially unconstitutional, as the constitutional issues presented by the utilization of both procedures are identical. The answer appears to lie in the fact that, in the first confession of judgment case, *Swarb v. Lennox,* 314 F.Supp. 1091, 1098–99 (E.D.Pa.1970) (three-judge court), *aff'd,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), the court found that the plaintiffs had only proven their case as to a class of "poor persons." *Compare Musselman v. Spies,* 343 F.Supp. 528, 534–35 (M.D.Pa.1972) (three-judge court) (distraint declared unconstitutional in the Middle District of Pennsylvania only as to a similar class of "poor persons").

sion of the United States Supreme Court in *Flagg Bros. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the *Luria Bros.* court held that, because there was no such "official involvement" of the state in the proceeding, there was no state action sufficient to justify invocation of the Fourteenth Amendment due process clause. *Id.* at 350–54.

It is difficult for CDS to apply the reasoning of *Luria Bros.* to the instant facts. Assuming *arguendo* that there was a distraint as opposed to an execution on a judgment, the undisputed testimony of Johnson established that a sheriff seized the Property in question. Therefore, in this instance, even the *Luria Bros.* court observes there clearly *is* sufficient "state action" to render the distraint unconstitutional, as in *e.g., Ragin, supra*, because a state official was involved in the process. *See Luria Bros.*, 672 F.2d at 354 (the posting of a distraint by a constable in *Ragin* supplied the requisite state action to a due process challenge).

However, *Luria Bros.* is not the last word on the constitutionality of distraint in Pennsylvania. In *Allegheny Clarklift, supra,* the Superior Court of Pennsylvania, per Judge (now Pennsylvania Supreme Court Justice) Montemuro, addressed this issue in a factual setting very similar to the instant case. There, a third-party non-tenant, the lessor of a forklift, sought return of the forklift which was held by a landlord in distraint for rent arrears owed by the lessee of the forklift. 356 Pa.Super. at 270–71, 514 A.2d at 606. No state official was involved in the seizure. The court nevertheless rendered judgment for the plaintiff, holding that distraint was facially unconstitutional in Pennsylvania. 356 Pa.Super. at 276, 514 A.2d at 609.

The *Allegheny Clarklift* court acknowledged the presence of *Luria Bros.* However, it noted that, subsequent to the *Luria Bros.* decision, the Supreme Court of the United States clarified the *Flagg Bros.* holding upon which the *Luria Bros.* court relied in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), in such a manner as to effectively overrule the application of *Flagg Bros.* in *Luria Bros.*

*Lugar* involved a due process attack upon a state-law pre-judgment attachment procedure which authorized the execution of a writ of attachment by a court on the mere *ex parte* application for same by a creditor. 457 U.S. at 924–25, 102 S.Ct. at 2747. The Court concluded that the requisite "state action" was present in the administration of this creditor's remedy because the creditor invoked the aid of state officials in effecting the attachment process. *Id.* at 942, 102 S.Ct. at 2756. Thus, as the *Allegheny Clarklift* court concluded, 356 Pa.Super. at 275–76, 514 A.2d at 609,

> the due process requirements of the Fourteenth Amendment were found to be necessitated simply because, "The procedural scheme created by the statute is the product of state action," *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756, and whenever "the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute." *Id.*

The focus of the *Lugar* court is therefore on the terms of the statute and its (constitutionally deficient) procedure, rather than, as in *Flagg Brothers* the defendant's identity. In examining the former, the *Lugar* court emphasized the continuing significance of the constitutional "first principle" enunciated by *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny, that is, that "the constitutional requirements of due process apply to garnishment and pre-judgment attachment procedures whenever officers of the state act jointly with a creditor in securing the property in dispute." *Lugar*, 457 U.S. at 933, 102 S.Ct. at 2751.

Thus, the state having once authorized private action in conjunction with its own officials, must ensure at the outset that the procedural scheme to be followed is beyond (constitutional) reproach. This is never more true than where the owner of the distressed property is not the delinquent tenant, but a third party.

Having said so much, we find that summary judgment was properly granted. Appellant's assertion that the distraint was justified by the statute misses the mark. Having been found nugatory itself, the Act cannot be relied upon to confer legitimacy elsewhere.

Finally appellant argues that because he gave notice, the upon of due process were met notwithstanding the Act's putative infirmity. When a similar contention was advances in *Stots, supra,* the court found that once the statute was invalidated, the exemplary behavior of the implementing party became irrelevant. We see no reason to disagree.

A different panel of the Superior Court has subsequently cited the holding of *Allegheny Clarklift* that distraint is unconstitutional with approval. *Langley v. Tiberi,* 364 Pa.Super. 378, 383 n. 3, 528 A.2d 207, 210 n. 3 (1987). In *In re Kelco Enterprises,* 86 B.R. 471, 475 (Bankr.W.D.Pa.1988) (BENTZ, J.), the bankruptcy court followed the *Allegheny Clarklift* holding that *Lugar* effectively overruled *Luria Bros.* and that distraint in Pennsylvania was in fact facially unconstitutional. We add our concurrence with this result, and note that it overcomes the anomaly of allowing a self-help procedure to survive constitutional attack simply because it contains state official involvement which would tend to curb its worst abuses. This result is also consistent with Pennsylvania's disdain for landlords' use of self-help procedures, noted at page 873, *supra.*

CDS relies heavily on a subsequent decision by a different judge of the same court from which the *Kelco Enterprises* decision emanated in *In re Egg Crate, Inc.,* 105 B.R. 283, 285–86 (Bankr.W.D.Pa.1989) (MARKOVITZ, J.), to argue that distraint survives in at least some form. In *Egg Crate,* the court finds that it is bound by *Luria Bros.'* prediction of Pennsylvania state law as interpreted by its Supreme Court, which it holds is not overcome by the Superior Court's decision in *Allegheny Clarklift.* For several reasons, we cannot accept this reasoning.

Firstly, the principle cited by the *Egg Crate* court is misplaced. The principle that federal courts, including this bankruptcy court, are bound by decisions of the highest court of a state by an interpretation of its own state's laws by its highest appellate court is confined to cases where the federal court is sitting in a diversity case or is otherwise bound by state law as interpreted by state courts. *See, e.g., Wiley v. State Farm Fire & Cas. Co.,* 1993 WL 186744, 995 F.2d 457, 459–60 (3rd Cir. 1993); *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 274 (3rd Cir.1985); *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3rd Cir.1985); and *In re Frymire,* 96 B.R. 525, 534 (Bankr. E.D.Pa.), *aff'd in part & vacated in part,* 107 B.R. 506 (E.D.Pa.1989). This principle does *not* apply to a case in which, like here, a federal court must determine whether a state law violates the precepts of the federal Constitution. If that principle did apply to such a case, the decisions in *Santiago, Musselman, Stots, Litton Business Systems,* and *Ragin, supra,* would have all been erroneous, because they were certainly not preceded by any Pennsylvania Supreme Court decisions so holding.

■ Secondly, the *Egg Crate* court references, but fails to give proper consideration to, the principle that decisions of inferior state appellate courts must be given considerable weight by the federal courts in weighing the applicable state law. *See Wiley, supra,* 995 F.2d at 459–60; *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3rd Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Jones & Laughlin Steel v. Johns–Manville Sales,* 626 F.2d 280, 285 (3rd Cir.1980); and *Ciccarelli, supra,* 757 F.2d at 553 n. 3. This is particularly so when the area of the law in issue has not been addressed by the Supreme Court, but has been addressed by a present member of that court in an appellate opinion, as in the instant circumstances.

Finally, although this court is bound by the decisions of the Third Circuit Court of Appeals, it is also bound by the decisions of

the Supreme Court of the United States. *See Taras, supra,* 136 B.R. at 948–50. We agree with the decisions in *Kelco Enterprises* and *Allegheny Clarklift* that *Lugar* has effectively overruled the interpretation of *Flagg Bros.,* upon which the *Luria Bros.* court relied.

We therefore conclude that CDS cannot validly assert a claim to the Debtor's Property in distraint because distraint is unconstitutional. The Debtor is therefore entitled to recovery of the Property, with the exception of Johnson's motor home, a claim for which was withdrawn from the case, on this second alternative ground as well.

3.  THE DEBTOR IS ENTITLED TO A TURNOVER OF ALL OF THE PROPERTY IN QUESTION, AS IT IS ALL "PROPERTY OF [ITS] ESTATE."

■ CDS argues, as a final alternative regarding a few of the items retained by it, that this court lacks jurisdiction over that property which the Debtor has not established that it owned. This property includes not only the motor home owned by Johnson, but also apparently the patcher truck rented from Community, the computer owned by an employee, and the time clock and other items of personalty which the Debtor had permitted PMS to use regularly.

However, it must be recalled that the Debtor is entitled to a turnover of any and all "property of the estate" held by CDS. 11 U.S.C. § 542(a). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The breadth of this term certainly appears to us to be sufficient to embrace the Debtor's right, as a lessee, to possess the truck owned by Community; its permissive right to use the employee's computer; and its ownership rights (subject to PMS' permissive use) of such items as the time clock. Certainly, the Debtor's rights in these items are superior to those of CDS, which has no rights in any of the

Property at all, given the impropriety of its attempt to assert a lien against them.

We therefore conclude that this court clearly has jurisdiction to order the turnover of all property of its estate to the Debtor, and that all of the Property in issue is property of its estate. *See In re Koresko,* 91 B.R. 689, 694–97 (Bankr. E.D.Pa.1988).

### D. CONCLUSION

In light of the foregoing, this court will proceed to exercise its jurisdiction and order that all items listed by the Debtor on its Exhibit "D–1," except the motor home, consideration of which was voluntarily withdrawn by the Debtor during the course of the trial, be returned to it forthwith.[4]

---

**4.** It would nevertheless appear that CDS' retention of the motor home, or the property of any party other than PMS, is improper and should not be perpetuated.