**T.R. ASHE, INC., Plaintiff,**

v.

**Robert BOLUS and Anthony Dente, Defendants.**

No. 4:CV–98–1570.

United States District Court,
M.D. Pennsylvania.

Feb. 2, 1999.

**MEMORANDUM**

McCLURE, District Judge.

**BACKGROUND:**

On September 22, 1998, plaintiff T.R. Ashe, Inc., commenced this action with the filing of a complaint pursuant to 42 U.S.C. §§ 1983, 1985, 1988, and the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961–1968. Stated succinctly, the complaint alleges that Ashe rented premises (a truck stop) from defendant Robert Bolus, then permitted defendant Anthony Dente to operate the business. Defendants exercised self-help and a purported right of distraint, which Ashe claims is unconstitutional. Ashe also alleges a number of other unlawful acts related to Dente's operation of the business.

Defendants, proceeding *pro se*, each filed a document captioned "Preliminary Objections," which we construed as motions to dismiss pursuant to Fed.R.Civ.P. 12(b). Pursuant to court order, a brief in opposition to the motions was filed by Ashe, but no reply briefs have been filed by defendants. The matter therefore is ripe for disposition.

**DISCUSSION :**

### I. STATEMENT OF FACTS

According to the complaint, Dente made Ashe aware of the possibility of renting a truck stop owned by Bolus and located in Bartonsville, Monroe County, on State Route 611 near Interstate Highway 80 and State Route 33. Dente was operating a truck repair and towing business on the premises. The parties reached an agreement whereby Ashe would lease the facility from Bolus, and Dente would pay rent to Ashe in an amount to cover payment to Bolus under the lease.

On November 1, 1997, Ashe and Bolus entered into a written lease agreement prepared by Bolus and/or his attorney. Ashe paid Bolus $10,500.00 as security, representing 3–months' rent. Dente entered into possession of the premises and began operations pursuant to the parties' verbal agreement. Unknown to Ashe, Dente performed work

James P. Gregor, Rosenblum & Anders, P.C., Stroudsburg, PA, for plaintiff.

Robert Bolus and Anthony Dente, pro se.

and occupied other portions of the premises owned by Bolus pursuant to an agreement between Bolus and Dente.

Shortly after Dente began operations, Ashe learned that Dente was charging for work either not done or done so poorly that the customer would complain to Ashe. Also, Ashe delivered a truck containing 12 recapped truck tires which Dente claimed never arrived. Ashe learned that "Defendant" (which defendant is not identified) ordered merchandise under the name "Elite Truck Repair, Inc." using Ashe's federal tax number and supplying a falsified Pennsylvania Tax Blanket Exemption Certificate with Ashe's address. Ashe is unaware of any such corporation, and no such corporation occupies the same address as Ashe. Dente admitted to ordering the parts and having them delivered to the leased property. He indicated that he would pay for the parts but has refused to do so. The vendor has submitted invoices and a collection letter for $2,080.75 to Ashe.

Ashe also delivered to the leased property a tractor and trailer for Dente's use. Dente has not permitted Ashe to retrieve those items, claiming a mechanic's lien. Dente failed to pay any rent to Ashe, that sum representing the amount to be paid over to Bolus. Bolus then seized other property belonging to Ashe under a notice of distraint mailed to Ashe, utilizing self-help and distraint to evict Ashe. The total value of the property seized is estimated by Ashe as approximately $30,500.00. Some of the property does not belong to Ashe. Also, in combination with the security deposit, the value exceeds the amount of rent allegedly due. At the time of the distraint, Bolus had not obtained a judgment or instituted any type of legal proceedings related to the rent or the seized items.

Ashe obtained a temporary restraining order (TRO, designated an injunction without prior notice or hearing in the Pennsylvania Rules of Civil Procedure) from the Court of Common Pleas of Monroe County. The TRO prevented Bolus from selling the seized items following his announcement of a public sale scheduled for February 26, 1998. On March 11, 1998, Ashe filed a motion to continue the injunction, but the TRO was dissolved by order of court because there had not been a hearing within 5 days of issuance of the TRO. See Pa.R.Civ.P. 1531(d). Defendants filed an answer and counterclaim in the state court proceedings, and that court set a date for a hearing on continuing the injunction. Before the hearing, counsel for Bolus notified the court that the property had been sold, and the court dismissed the action by Ashe seeking injunctive relief because there was an adequate remedy at law.

## II. COUNT I

Defendants first move to dismiss the complaint for lack of subject matter jurisdiction. We address first the claim under § 1983. Defendants contend that the alleged use of distraint was purely a private action, so that there is no state action for purposes of § 1983. Since state action is an element of a § 1983 action, the argument implies that the complaint fails to state a claim upon which relief can be granted. Since a § 1983 action inherently involves a federal question over which a district court has jurisdiction, the better approach is to treat the motion under Rule 12(b)(6).

### (A) Standard

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The complaint must be construed in favor of the plaintiff with every doubt resolved in the plaintiff's favor. *In re Arthur Treacher's Franchise Litigation,* 92 F.R.D. 398, 422 (E.D.Pa.1981). That is, the court must accept as true all factual allegations set forth in the complaint as well as all reasonable inferences that can be drawn from them. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan* at 1261. "[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that could be proved consis-

tently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Whether a plaintiff will ultimately prevail is not a consideration for review of a motion under Rule 12(b)(6). *Nami* at 65.

### (B) Section 1983

■ "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254–257, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). "In order to state a claim [under § 1983], plaintiff must show that defendants, acting under color of state law, deprived him of a right secured by the Constitution or law of the United States." *Morse v. Lower Merion School District,* 132 F.3d 902, 907 (3d Cir.1997) (citations omitted).

■ The question in this case is whether defendants were acting "under color of state law" when they took action to distrain the property belonging to or in the possession of Ashe. Ashe cites to a line of cases holding that garnishment, prejudgment attachment, replevin, etc., are constitutionally infirm and that a private party may be liable under § 1983 for taking such actions. The instances in which such liability attaches are when the defendant invokes a state-created attachment statute and the action is "fairly attributable to the State." *Wyatt* at 162, 112 S.Ct. 1827 (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). An action is fairly attributable to the state if two conditions are met:

First, the "deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Ibid.* Second, the private party must have "acted together with or ... obtained significant aid from state officials" or engaged in conduct "otherwise chargeable to the State." *Ibid.* The Court found potential § 1983 liability in *Lugar* because the attachment

scheme was created by the State and because the private defendants, in invoking the aid of state officials to attach the disputed property, were "willful participant[s] in joint activity with the State or its agents." *Id.,* at 941, 102 S.Ct. 2744 ... (internal quotation marks omitted).

*Wyatt* at 162, 112 S.Ct. 1827.

An excellent summary of various courts' interpretations of the Pennsylvania distraint statute is provided in *In re Road Patch Services, Inc.,* 154 B.R. 869 (Bankr.E.D.Pa. 1993). In that case, the bankruptcy court first found that the action taken by the landlord did not constitute distraint. *Id.* at 871–873. It also addressed an alternative argument by the landlord that its actions were valid under the law of distraint, beginning by pointing out that Pennsylvania law disfavors distraint because of the potential for significant harm by an unchecked, overreaching landlord. *Id.* at 873. Moreover, the Pennsylvania distraint statute, 68 Pa.Stat.Ann. § 250.302, has been held to be facially unconstitutional by a number of federal courts. *Id.* (citing *Ragin v. Schwartz,* 393 F.Supp. 152, 156–157 (W.D.Pa.1975) (three-judge court); *Litton Business Systems, Inc. v. Paul L'Esperance, Inc.,* 387 F.Supp. 1265, 1266 (E.D.Pa.1975); *Stots v. Media Real Estate Co.,* 355 F.Supp. 240, 243 (E.D.Pa.1973)).

The bankruptcy court then turned to the Third Circuit's opinion in *Luria Bros. & Co., Inc. v. Allen,* 672 F.2d 347 (3d Cir.1982), and summarized that case as follows:

CDS nevertheless argues that the decision of the Third Circuit Court of Appeals in *Luria Bros., supra,* has saved distraint from constitutional extinction. In that case, a subtenant brought an action against a landlord which had, without the benefit of involvement of any state official, posted a notice of distraint on a subleased premises and held 300 tons of steel plate located therein until the sublessee posted a bond. *Id.* at 350. Relying heavily upon the decision of the United States Supreme Court in *Flagg Bros. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the *Luria Bros.* court held that, because there was no such "official involvement" of the

state in the proceeding, there was no state action sufficient to justify invocation of the Fourteenth Amendment due process clause. *Id.* at 350–54.

154 B.R. at 873–874. More specifically, the Third Circuit stated:

> We hold that when a private person merely takes advantage of a self-help remedy recognized by the state, his actions are not attributable to the state. We therefore conclude that no state action was presented by Economy's posting of the notice of distraint or by its counterclaiming in the district court.

*Luria Bros.* at 354. *See also Gibbs v. Titelman,* 502 F.2d 1107 (3d Cir.) (no state action in self-help repossessions under Pennsylvania statute governing same), *cert. denied,* 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). The holding of *Luria Bros.* did not apply in *In re Road Patch* because the property at issue in the latter case had been seized by a sheriff. 154 B.R. at 874.

█ The next question is whether the holding of *Luria Bros.* survives the Supreme Court's opinion in *Lugar.* This issue was discussed by the Pennsylvania Superior Court in *Allegheny Clarklift, Inc. v. Woodline Industries of Pennsylvania, Inc.,* 356 Pa.Super. 269, 514 A.2d 606 (1986). In that case, the Superior Court held that, under *Lugar,* the emphasis is on the procedure rather than the identity of the defendant. When the state authorizes procedures under which officers of the state act jointly with the landlord to seize property, due process applies. *Allegheny Clarklift* at 275–276, 514 A.2d at 609 (citing *Lugar* at 933; *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)). "Thus, the state having once authorized private action in conjunction with its own officials, must ensure at the outset that the procedural scheme to be followed is beyond (constitutional) reproach." *Id.* at 276, 514 A.2d at 609. Because the Landlord Tenant Act was "nugatory," any action taken thereunder is not legitimate nor valid. *Id.*

█ It is Ashe's argument that these cases, taken together, show that defendants acted "under color of state law" by following the dictates of an unconstitutional statutory scheme. Defendants argue that the lack of involvement of any state official precludes a § 1983 action. As if by accident, defendants have hit upon a flaw in the reasoning of Ashe. Indeed, there are several flaws.

We turn first to *Lugar,* in which the Supreme Court's opinion in *Flagg Bros.* was clarified. In *Flagg Bros.,* the claim was a due process violation, which entailed proving "state action" as opposed to private action. "The Court concluded that the sale, *although authorized by state law,* did not amount to state action under the Fourteenth Amendment, and therefore set aside the Court of Appeals' contrary judgment." *Lugar* at 930, 102 S.Ct. 2744 (emphasis added). Thus, the holding in *Flagg Bros.* was that there was no due process violation absent state action, and the Court did not address the question of whether there was action "under color of state law." The facts of *Flagg Bros.* were distinguishable from those in *Lugar* because in the latter there plainly was state action: the lessor attached the property by *ex parte* application for a writ of attachment, which was issued by a clerk of the state court and which was executed by a county sheriff. *Lugar* at 924, 102 S.Ct. 2744. *See also Lugar* at 939, 102 S.Ct. 2744 (action by private party pursuant to a statute, without something more, does not mean that the party is a "state actor"; "something more" in the context of prejudgment attachment is joint action with state officials). Also, since there was state action in *Lugar,* the defendant acted under color of state law. *Id.* at 935, 102 S.Ct. 2744.

█ The lesson of *Lugar,* then, is that "state action" is required for a due process claim. Action in concert with state officials by a private party satisfies both the "state action" requirement and the "under color of state law" requirement for a § 1983 claim. However, when a private party acts pursuant to a state statute, or purports to do so, the "state action" requirement is not necessarily satisfied:

> While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is

the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, *if the second element of the state-action requirement is met as well.*

*Lugar* at 941, 102 S.Ct. 2744 (emphasis added).

If a landlord adheres to the Pennsylvania Landlord and Tenant Act in distraining personal property, the process begins with providing notice in writing of the distress to the tenant or owner of the personalty. 68 Pa. Stat.Ann. § 250.302. The tenant or personalty owner may replevy the property within 5 days of notice. 68 Pa.Stat.Ann. § 250.306. The tenant also may initiate a proceeding to determine a set-off. 68 Pa.Stat.Ann. § 250.307. The replevin and set-off proceedings would involve court action. If no replevin is sought, the landlord, along with a sheriff, constable, or deputy sheriff or deputy constable, cause the property to be appraised. 68 Pa.Stat.Ann. § 250.308. The property is then subject to a sheriff's sale. 68 Pa.Stat.Ann. § 250.309. The tenant or owner of the personalty has a cause of action in trespass for improper distress. 68 Pa. Stat.Ann. §§ 250.312, 250.313. Some property is exempt from distraint. 68 Pa.Stat.Ann. §§ 250.401–250.404.

■ It is the involvement of state officials, either the courts or the sheriff or constable, which renders this scheme unconstitutional. *See In re Road Patch* at 874 (reasoning of *Luria Bros.* inapplicable when sheriff involved in seizure of property); *In re Kelco Enterprises,* 86 B.R. 471, 475 (Bankr.W.D.Pa. 1988) (citing *Allegheny Clarklift* for proposition that focus is on involvement of state official in constitutionally deficient procedure); *Allegheny Clarklift* at 275–276, 514 A.2d at 609 (if state authorizes private action in conjunction with own officials, scheme subject to constitutional analysis). The fact that there may be a due process violation when the statute is followed does not lead to the conclusion that there was a due process violation in this case, since the statutory procedure was not followed.

It should first be noted that the invocation of the Landlord and Tenant Act in the notice of distraint is rather a bizarre act, given the terms of the lease. The lease specifically grants (or at least purports to grant; we do not reach the question of whether the terms of the Act may be altered by contract) to Bolus the right to enter the property and distrain goods and chattels located on the premises, and to sell them at auction. Lease Agreement, Exhibit B to Complaint, at 12 § 11.02(c), (d). It also states that Ashe waives (1) any exemption from distraint and sale of any goods on the property, (2) any limitation on the property to be distrained, the time for doing so, and the landlord's burden of identifying the goods, (3) and any rights under the Landlord and Tenant Act. *Id.* at 13 § 11.04. Despite these provisions, the notice of distraint specifies that it is made pursuant to § 250.302. It is remarkable that a landlord would go to such lengths to avoid the Landlord and Tenant Act in a lease, then invoke its provisions.

Regardless, it is plain that Bolus did not adhere to the provisions of the Act, since there was no involvement of state officials, whether sheriffs, constables, their deputies, or judges. The distraint and sale were done entirely privately. The mere invocation of the Landlord and Tenant Act does not create state action where otherwise there is none. Regardless of the underlying rationale, and regardless of whether the Landlord and Tenant Act of 1951 is constitutional, *Lugar* and *Flagg Bros.* make plain that Ashe may not recover under § 1983 absent some involvement by state officials, or at least through some exercise of state authority (i.e. conduct attributable to the state) greater than is present in this case. In fact, this case appears to be analogous to *Flagg Bros.,* on which the Third Circuit relied in *Luria Bros.*

Moreover, *Luria Bros.* actually is consistent with *Lugar.* The Superior Court's statement in *Allegheny Clarklift* that there is a difference of focus between these opinions is a misreading of *Luria Bros.* Nothing in *Luria Bros.* states that there is a focus on the identity of the defendant; rather, the inquiry is whether there is state action, without regard to whether the state actor is named as a defendant. That is precisely the focus in *Flagg Bros.,* as restated in *Lugar. See esp. Lugar* at 933, 102 S.Ct. 2744 (col-

lecting cases between creditors and debtors in which no state official was named as a party but in which procedure violated due process; "Necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment."). The necessity of some action attributable to the state beyond the invocation of state procedure is explicitly restated, again, in *Wyatt.*

The confusion may lie in the fact that the Landlord and Tenant Act had been found to be facially unconstitutional, a holding with which we do not quibble. There is a difference, however, between a holding that a statute is facially unconstitutional, i.e by its terms, which means that adherence thereto is presumed, and conduct alleged to have amounted to a constitutional violation, for which state action must actually occur.

In short, there is no state action alleged in the complaint (actually, the opposite is alleged), and Ashe's claim under § 1983 fails.

We do not mean by stating such that Ashe is without remedy. As a number of courts have pointed out, Pennsylvania law frowns on self-help by landlords. *In re Road Patch* at 873 (collecting cases). Ashe therefore may well have remedies for an unlawful distraint under state law, and the state court so stated in dismissing the action for an injunction. Our holding is limited to a conclusion that, absent state action, the proper remedy is not to be found under § 1983.

### (C) Section 1985(3)

Ashe states that the second part of its claim under Count I of the complaint is brought under 42 U.S.C. § 1985(3).

> [I]n order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997) (citing *United Brotherhood of Carpen-*

*ters and Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 828–829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

While the precise type of class which must be alleged is an open question, *Lake* at 685–686 and 685 n. 4, Ashe has alleged no class-based discrimination whatsoever, and we are unable to perceive a class protected under § 1985(3) from the allegations of the complaint.

### III. RICO

Count II of the complaint sets forth a claim under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), specifically 18 U.S.C. § 1962(c), (d). The elements of a claim under § 1962(c) are: (1) an enterprise affecting interstate commerce; (2) the defendant's employment by or association with the enterprise; (3) the defendant's participation, direct or indirect, in the conduct of the affairs of the enterprise; and (4) the defendant's participation through a pattern of racketeering activities that must include at least two racketeering acts. *Baglio v. Baska,* 940 F.Supp. 819, 832 (W.D.Pa. 1996), *aff'd,* 116 F.3d 467 (3d Cir.1997) (table). "Racketeering activity" is defined in 18 U.S.C. § 1961(1). The court is unable to discern how any of the alleged activity on the part of defendants fits within the definition there recited, i.e is indictable as any of the offenses described or listed.

Ashe also asserts that defendants conspired to violate § 1962(c), which is actionable under § 1962(d). Since the acts related to the conspiracy, i.e. which the defendants are alleged to have conspired to commit, do not constitute a substantive RICO violation, the conspiracy claim fails as well.

### IV. CONCLUSION

While it appears that defendants' activity in exercising self-help against a tenant was unlawful under Pennsylvania law, the conduct is not attributable to the Commonwealth, meaning that there was no "state action" for purposes of the Due Process Clause, and Ashe's claim under § 1983 fails.

Also, absent an allegation of class based discrimination, Ashe's claim under § 1985(3) is subject to dismissal under Rule 12(b)(6). Finally, absent an allegation of conduct constituting "racketeering activity," Ashe's RICO claims fail as well.

Although not discussed above, we note that Ashe's invocation of § 1988 is for the purpose of seeking attorney's fees. No right to attorney's fees exists under the circumstances.

For all of these reasons, defendants' motion to dismiss will be granted, and the complaint will be dismissed. An order consistent with this memorandum will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The preliminary objections (record document no. 3) filed by defendant Robert Bolus, construed as a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

2. The preliminary objections (record document no. 5) filed by defendant Anthony Dente, construed as a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

3. The complaint is dismissed as to both defendants.

4. The clerk is directed to close the file.